20519

CHILDREN'S BUREAU OF SOUTH CAROLINA, Appellant, v. Sondra JOHNSON, a minor parent over the age of fourteen (14) years, and Baby Stephen Ray Johnson, Respondents.

(237 S. E. (2d) 893)

454

*Daniel R. McLeod, Atty. Gen.,* and *H. Brent Fortson, Asst. Atty. Gen.,* of Columbia, *for Appellant,*

*Allan R. Holmes,* of Columbia, *for Respondent,*

October 4, 1977.

*Per Curiam:*

This action was instituted by the Children's Bureau in order to establish its right to consent to an adoption of Baby Stephen Ray Johnson, the illegitimate infant son of respondent, Sondra Johnson (Anderson). The petition of the Chillren's Bureau alleged that the respondent had executed a "document of surrender" authorizing it to provide the necessary care and placement for adoption purposes of her child and also alleged that respondent had willfully

failed to visit or support her child for a period in excess of six months. The family court judge denied the relief requested and ordered a return of the child to the respondent to be implemented under court supervision. He based this decision upon his conclusion that the circumstances surrounding the execution of the document of surrender rendered it void and that there was no willful failure on the part of respondent to visit or support her minor child. The Children's Bureau has appealed from the order of the family court and we are in agreement that the order must be reversed.

On May 19, 1971, the respondent, while a voluntary admittant at Hall Institute, executed a document of surrender which contained terms authorizing the Children's Bureau to take custody of the child and consent *in loco parentis* to his legal adoption. The South Carolina Code specifically approves the use of this type of document in adoption proceedings:

An adoption of a child may be decreed when there have been filed written consents to adoption executed by:

\* \* \*

(d) the executive head of an agency if both parents are dead or *if the child has been relinquished for adoption to such agency* or if the rights of the parents have been judicially terminated and custody of the child has been legally vested in such agency with authority to consent to adoption of the child; . . .

Section 15-45-70, South Carolina Code, 1976. (emphasis added). *See also* Section 43-11-90 of the Code which deals with the ability of the Children's Bureau to consent to the adoption of children committed to its care.

The respondent remained at Hall Institute until August of 1971 and on November 23, 1971 the Children's Bureau gave permission to the respondent to assume the care of her minor child pursuant to an agreement. It is stipulated that the document of surrender executed May 19, 1971 consti-

tuted a portion of that agreement, but the document releasing the child to the respondent's care, a form supplied by the Bureau, contained the following provision: "The Children's Bureau has no further responsibility for the care of the baby as of November 23, 1971." The respondent urges as an additional sustaining ground that the document executed November 23, 1971 nullified the document of surrender. While we express grave doubt as to the validity of the document of surrender in light of the quoted term's relieving the Children's Bureau of responsibility for the child, the argument that these terms operated to nullify the document of surrender cannot serve as a ground for affirmance because the preponderance of the evidence in this equity case reveals that respondent's minor child has been abandoned for a period in excess of six months under the provisions of the Code governing the termination of parental rights. As will be discussed below, this conclusion leads us to find reversible error in the lower court's failure to terminate the parental rights of the respondent and grant the Children's Bureau the right to consent to the child's adoption. It is therefore unnecessary to discuss the additional contention of the Children's Bureau that the lower court erred in finding that the circumstances surrounding the execution of the document of surrender rendered it void.

Chapter 11 of Title 20 of the 1976 Code of Laws governs actions for the termination of parental rights to abandoned or abused children. Section 20-11-30 gives the procedure to be followed when an agency petitions the court under the chapter and Section 20-11-40 allows the court to terminate parental rights to a child abandoned for a period in excess of six months, thereby rendering the child eligible for adoption. Section 20-11-20 contains the definition of an abandoned child relevant to this case:

For the purposes of this chapter, an abandoned child shall be:

(1) A child whose parents have willfully failed to visit or have willfully failed to support or make payments toward

his support for six consecutive months immediately preceding institution of an action or proceeding to declare the child to be an abandoned child; . . .

A finding that respondent's infant son was abandoned for the statutory period is required under our view of the evidence summarized below. This finding authorizes a termination of parental rights and we are in agreement that respondent's parental rights should have been terminated and the child made eligible for adoption.

The testimony of Mrs. Schoenberg, respondent's caseworker from the Children's Bureau, Mrs. Cannon, the executive director of the Bureau, and the respondent illustrates that the position of the Children's Bureau was that the document of surrender was not voided when the respondent was permitted to assume the care of her child in November of 1971 and that this position was made known to the respondent. The agents of the Children's Bureau believed in good faith that the document of surrender gave the agency the authority, during the entire period in question, to do any act consistent with the child's best interest. This belief is illustrated by the following interchange between Mrs. Cannon and respondent's counsel.

Mrs. Cannon: Once the child has been committed to the Agency, the Agency carries a very grave responsibility, we feel, for doing whatever seems to be in the best interest of the child. When I say "seems," seems in the judgment of the staff, the best interest of the child.

Respondent's counsel: I believe you also testified that it's also the policy that the Bureau continues working with the natural parents in these cases, attempting to place them back with the natural parents. Is that correct?

Mrs. Cannon: Not necessarily. Every case is different, and you operate in each case according to the circumstances in that case. (Tr. p. 116.)

In February of 1972, the Children's Bureau, based upon its assumed authority under the document of surrender, removed the child from the respondent's care and placed him with his maternal grandmother. The record illustrates that respondent acquiesced in this exercise of authority over the child. In May of 1972, the child's grandmother requested the Children's Bureau to remove the child from her care for an indefinite period of time. The child was placed in the foster home in which he still resides on May 19, 1972 and, shortly thereafter, the Children's Bureau determined that it would be in the child's best interest to prohibit visitation of the child by his natural family. This decision apparently affected only the grandmother because the record reveals that Mrs. Schoenberg could not locate respondent, despite numerous attempts, during the period from May 16, 1972 until October 31, 1972. The unavailability of respondent during this period clearly evinced an attitude of willful neglect on her part insofar as the fulfillment of parental obligations is concerned. When contact was finally established in October of 1972, respondent indicated that she still wanted her baby but was more interested in what effect the abandonment law would have on her relationship with her baby. However, subsequent to this meeting and up until the initiation of this lawsuit by the Children's Bureau in June of 1974, respondent made no meaningful attempt to re-establish her parental obligations and duties toward her minor child. Her conduct in this case amounts, in effect, to acquiescence in the claimed authority of the Children's Bureau under the document of surrender to act in the child's best interest, even to the extent of having him placed for adoption. The child has been in the care of its foster parents since May of 1972 and the bookkeeper for the Children's Bureau testified that neither respondent nor anyone in her behalf had provided financial assistance for the child.

Under the unusual circumstances present in this case, we are of the opinion that a preponderance of the evidence requires the conclusion that the child in question has been

abandoned for a period in excess of six months under the provisions of Section 20-11-40 and that the child should be made eligible for adoption. Accordingly, the order of the lower court is reversed and the case is remanded for the entry of an order terminating the parental rights of respondent to baby Stephen Ray Johnson and granting the Children's Bureau the right to consent to the child's adoption.